Good morning, your honors. My name is James Loebsenz. I represent Marvin Wilbur. With me at council table is Mr. Feyander. Together we're going to present argument for all four of the Wilburs. I'd like to reserve three minutes for rebuttal. It's my intention to talk for no more than twelve minutes on the issues involving statutory construction and the due process claim. Mr. Feyander will address the Treaty of Point Elliot issues for no more than five minutes, leaving three minutes for rebuttal. I'd like to start with the three unambiguous tax retrocession statutes which say that there are no taxes during the period of the cigarette tax contract. You mean no state taxes? There are no state taxes. They say very clearly, do not apply, shall not apply, and does not apply during the period of the cigarette tax contract. That should be the end of the case. It's well established. Well, it could be the end of the case if taxes were paid to the tribe. But that can't mean that no taxes are due, period, on the sale of cigarettes. Then that would just render the whole taxing scheme a farce. If people who were selling cigarettes that were subject to taxation were able to escape taxation, period, because there is a contract and not pay the taxes to either the tribe or the state. The purpose of that law was to substitute the tribe for the state. I agree with that, Your Honor. When I say it should be the end of the case, it should be the end of this case. If taxes are owed to the tribe, the tribe has both the power to criminally prosecute and the power to sue civilly for recovery of those taxes. The tribe has sued civilly for recovery of those taxes. That court, the tribal court, has the power to decide that case. Should the tribe decide to prosecute criminally, the tribal court would have power over that case. But in this case, it's over. So your argument is that the federal government did not have authority to bring criminal charges against the defendants due to their failure to pay taxes to either the tribe or the state. That's your argument? Yes. I'm not sure I would describe it exactly as authority, but that is the argument that there are no taxes. There are no taxes due to the state. Well, your argument is that the criminal statute, federal statute, only covers failure to pay taxes to the state, not to the tribe. Yes, Your Honor. And to follow up on your point, Your Honor, here the tribe thinks the tribal taxes do. And the tribe sued for $364,000 of taxes, which they asked that it be doubled pursuant to a tribal statute that allows for doubling of the civil penalty. And the court, the district court, recognized, I think, that there really isn't supposed to be both a state tax and a tribal tax. It's one or the other because of that statute which says tribal tax is in lieu of state and local taxes. You know, can I ask a question that is so far not coming out in the discussion here? There are three separate periods. There's a first period before the tax contract with the state is in effect. That's from July 99 to October 2, 2003. There's a second period from October 3, 2003 to March 27, 2005. During that period, we have the tax contract in effect and the license from the tribe is in effect. Then after March 25, up until the time of the indictment, the tax contract is still in effect, but the license from the tribe is gone. And it seems to me that the liability may be different depending on what period we're talking about. For example, it seems to me that between 2003-2005, that is to say the second period, that's where your argument is the strongest. The tax contract is in effect. Your clients have a license to sell cigarettes. If there's any tax owing, it's to the tribe, it seems to me. But it does seem to me that before the tax contract is in effect, that is to say during the first period, unless the Point Elliot Treaty argument prevails, they owe taxes to the state. And further, in the third period, after their license from the tribe is no longer in effect, the tax contract doesn't cover it. And unless your argument prevails as to the third definition of Indian retailer has to be into that contract or read into that contract, again, they owe taxes to the state. So can you split up those three periods for me? I can. And maybe what I could do is start with the third period and just point out the B-3, third exemption, which is for, let me find it here, Indian owned and operated business on... That's the third definition in the statute as to what might constitute an Indian retailer, correct? And the government has conceded that it's on land held in trust for an Indian retailer. But the government has not conceded that that's covered under the tax contract. The government has conceded two things, which I think do amount to a concession, that it is covered. They don't admit it. But the government says, one, it's on trust land. And two, it's in the plea agreement itself. The government is bound by the plea agreement. They say, Marvin and Joan Wilber owned and operated the trading post through trust entities, they say. But that's not the question I'm after. What I'm after is you have three definitions of Indian retailer in the statute. In the tax contract, the contract treats as covered by the contract the first two, but does not include the third. And because that's not in the tax contract, I don't see that that means that the taxes are owed to the tribe once the Wilbers have lost their license, because then they qualify only under the third definition, and that definition is not included in the tax contract. I see, Your Honor. I believe, assuming that the tax contract can somehow overrule or supersede the statutes themselves. And the statute... Well, that's not quite how I would say it. I would say that it seems to me at least there's an argument that the governor in negotiating the tax contract does not have to negotiate a contract including all three branches of that definition. The governor negotiated a contract with only definitions one and two. And second, down in 14, subsection 14, where it's going to lay out all the definitions of all the terms, it says the definitions given here of Indian retailer shall apply for this statute and for all these three tax retrocession statutes. And it names the sales tax, the retail tax, and the use tax statutes. It says this definition shall apply for those tax retrocession statutes. And it says the governor has to conform with the requirements of this statute. So the statutes say the governor can't negotiate a contract. I don't know what the governor would have done, Your Honor. But the legislature said there's a tax retrocession during this period of time if you're an Indian retailer. But if the contract is invalid, does that help you? Well, you're asking me what the governor would have done if he had known that the contract had to include a third provision, which it doesn't include. Yeah, but you're arguing that the contract is inconsistent with the governing law. I don't think so. I think the government is arguing that the contract is inconsistent with the law. Here, let me lay it out for you. You say that the definition of Indian retailer includes all three branches of the definition. The tax contract includes only the first two branches of the definition. And therefore, you say the contract doesn't accord with law. Am I misstating your position? I think you are, Your Honor. Okay, what is your position, then? I think I'm saying that just because the contract is silent on the third definition doesn't mean that it's inconsistent. It doesn't say, and by the way, if you're owned and operated by an Indian entity and operated on trust land, you're not an Indian retailer. It's just silent. And I don't think silence on that can be read as being in conflict with the statutes. Now, the government says that there's a clarifying amendment passed in 2008, which says that if the contract is inconsistent with some part of the statutes, that it prevails, that it trumps. And one point I wanted to make there is that if they're saying it's a clarifying amendment, then they're saying that it wasn't clear before the clarifying amendment, which is saying there's ambiguity, which under all the canons of ambiguity would indicate we would win. But moreover, if it's supposedly clarifying this ambiguity in a way to show that the government is right, it doesn't show that the government is right until 2008. And you can't ex post facto make the Wilbur's guilty of a crime. I understand the argument. Let me go back to the first period, that is to say the period before there was any tax contract in effect. Why were the taxes not owed to the state or the local government during that period? I think they would be. So your argument then is statute of limitations? Yes. In this case, the district court judge said, I'm not going to decide if they're an Indian retailer, but I'm going to order them to pay $10.9 million of tax to the state, but I haven't really decided that they're not an Indian retailer for any portion of it, and we'll leave it to the Ninth Circuit to figure out. And she quarrels with the government saying, you've got the tribe here to speak to me as the victim of the crime, but you're saying that they're not the victim of the crime, the state is, and then she ends up saying, I'm going to order $10.9 million and we'll let the Ninth Circuit figure it out. But as I look at this case, the first count is an allegation of a continuous conspiracy running from 1999 through the date of the indictment. All the rest of the accounts are illegal shipment, or they call it trafficking, and the time period specified in all the rest of the accounts fall either during period one before the entry of the tax, before the signing of the tax contract, or in period three while the tax contract is in effect, but after the license has expired. But it sounds to me as though you have just conceded that counts, there's going to be counts two and three, that is to say trafficking in contraband cigarettes before the entry of the tax contract, your argument here doesn't apply. But they didn't plead to those counts. Which counts did they plead to? They only pled to the conspiracy count. I see, so those are off the table. Who cares about the other counts? If they had stuck, I'd understand. So they've pled only to count one? Only to count, well, they also pled to a conspiracy count to money laundering with the same thing, but if there's no conspiracy. But the whole thing stands to fall on the conspiracy then? Yes. Okay, that part I had not picked up, okay. I did want to point out the significance of Commissioner Komenaut's granting of discretionary review by the Court of Appeals Division II in the Washington State system. You can't grant discretionary review of a pretrial ruling unless you can meet pretty narrow criteria under the Washington rules. And the criteria he found that was met was that there was obvious error on the part of the trial court judge that wouldn't dismiss. It's the same ruling as the district court in this case. They both had the same argument. The trial court in Pierce County refused to dismiss. Commissioner Komenaut called it obvious error. Since the time we wrote the briefs, Your Honors, the case has been certified by the Court of Appeals to the Washington Supreme Court. It is set for oral argument June 30th of this year. The point I wish to make, which relates more to the third due process argument than any of the others, but it relates most to that, is it's the government's burden to show to avoid a due process violation that it was clear beyond any doubt from established tax law that the Wilbers had to pay these taxes. If it was clear beyond, it can't be clear beyond any doubt that they did have to pay these taxes when a Washington State commissioner has found that it's obviously wrong and there weren't any. And it actually doesn't even matter how the Komenaut case turns out in the Washington Supreme Court. The very fact that it's there shows that it's not settled law. Well, the Supreme Court could take a different view. To what extent do you think the Washington Supreme Court decision will affect ours? Well, unless the Washington Supreme Court says the commissioner is so wrong, not only was it not obvious error, it was obviously correct and it was clear before May 15th, 2007, that people like the Komenauts and the Wilbers did have to pay tax and it was clear beyond any doubt, unless they hold that, then the Wilbers win, at least under the due process ground. Because that's their burden, to show that it was clear beyond any doubt through established law. And there's no established law. Beyond a reasonable doubt applies in a different sense. I'm not proud of the system that we have, and I'm talking about independent of this case, but it's usually a losing argument when the criminal defendant says, you know, it's a complicated statute and we're going to argue about the meaning of the statute. When the court finally says, here's what the statute means, that is in the end what the statute means. I mean, we have rules of lenity, we have ambiguity and so on, but merely because it's a complicated statute over which there may be some argument as to the meaning, that doesn't necessarily win it for you. I would submit, Your Honor, that in the criminal tax area, it does mean I win and that you are wrong, because that's what the case is saying. And there has to be United States v. Pomponio, there has to be a known legal duty. I understand that and agree with that. And if there's complexity, and in this case there are nine new statutes that have never been in any way interpreted by anybody prior to May 15, 2007. I think I'm way over my time, and I'd like to leave some time for Mr. Feinder. We'll give you a little more time. Thank you. And don't forget, you'd also like rebuttal, so keep that in mind. Well, may it please the Court, my name is Jack Feinder. I represent April Wilder, one of the defendants in the case, but I'm arguing the treaty issue for all of the defendants. At the time the treaties were negotiated in the Pacific Northwest in 1855, just very briefly, the idea was to get the Indians out of the way of the railroad route of the areas that were going to be settled. Because of that, you know, they're often in remote locations. They're out on a patch of rocks. They're not in the farmlands. The Swinomish Reservation is basically a slew. And I say that because when these treaty cases come up, they often involve gambling, fireworks, alcohol, cigarettes, because that's what's there. I've represented tribal members in many of these cigarette cases, and I always tell them, because basically it involves whether they've got to collect and pay state sales tax on their sales, and I always tell them it would be a lot easier to represent you fellows if you were selling tax-exempt medical equipment, wheelchairs, pharmaceuticals. Alcohol and cigarettes just aren't popular. So we want to set that aside and not think about cigarettes. Just think of this as a person who is dealing on their reservation in a tribal good. Maybe I can cut to the chase here. Why doesn't Baker resolve the question in front of us with respect to the treaty? Oh, probably for a bunch of reasons. The Swinomish Reservation, those people were present at the negotiation of the Point Elliott Treaty. Baker involved a member of the Squaxin Island tribe 100 miles to the south. And I think you can't say the government policy in dealing with tribes was not that one size fits all. Every tribe was different. Every tribe's understanding of that treaty could be different. You can't generalize that they all thought their treaty meant the same thing. There were separate negotiations on separate days. If you look at the witnesses, they were separate. Maybe I should explain what I mean. As I understand what was happening in Baker, there was an argument that trading was protected under the treaty. And the issue was whether or not a taxing system, pretty much the one we have now, was an impermissible burden on the protected trading. And as I read the opinion written by an en banc court on page 1485, they say that's not an impermissible burden on the protected right to trade. So how do I get out from under that? If you conduct a detailed reading of the decision, the tribal members in that case elected not to undertake any detailed factual inquiry or presentation of proof or evidence. They were simply arguing the words of the treaty as a matter of law provided them with that exemption. Now, subsequent to that decision, the circuit in Cree v. Waterbury says it's error in interpreting the treaty to do that without making a detailed factual inquiry with evidence into the party's understanding. That was done in this case. Judge Peckman entered 15 findings of fact on page 15 to 16 of her opinion, all of which say things like the Swinomish traded with non-tribal members. They traded in tobacco prior to the treaty. They didn't contemplate a tax. We had an expert. All that testimony was unrebutted. Yet at the end, even though the treaty was not contemplating any burden on their right to trade and the right to trade contemplates someone to trade with, she concluded that, well, because the tax is on the non-Indian purchaser, that's not a restriction on the treaty right. But see, this panel or this court's Smiskin decision, which is similar, involved a treaty right to travel, tells us that's wrong. If there was no restriction at the time of the treaty, even if it's just notifying someone that we're bringing cigarettes in, you don't get to balance that and decide whether that's a restriction or a burden. If it wasn't there, you can't do it now. And I think this interpretation is supported by the legislative history of the Contraband Cigarette Trafficking Act. It says it's not intended to abrogate or limit existing treaty rights. I think the judge also erred when she's looking at the Baker decision and making a discussion saying that, well, they didn't really address this in the treaty or treaty negotiations very thoroughly. So there was silence. And she took that into account in making her ruling. If there's silence during treaty negotiations, the right remains there. You can't take silence into account there. And I believe that once she said this is not a restriction on their treaty right to trade because the tax, we're merely asking them to collect the tax from the non-Indian purchaser, that was something that wasn't contemplated by the tribal traders at the time of the treaty. Even if it's just collecting and prepaying the tax for the state, that's still a burden that wasn't there. It doesn't matter if it wasn't a minimal burden. Now, what situation does that? That's why this all loops back into what Mr. Lobson is arguing about. A similar case was before the Supreme Court in the early 90s. The state of Oklahoma sued the Potawatomi Nation because their tribal store wasn't collecting state taxes. Well, it was determined that the state couldn't proceed, not because of a treaty, but because they couldn't sue the tribe because of the sovereign immunity. Well, this is sort of the same way. Because they have the treaty right to engage in this commercial exchange, the state is left with the most effective remedy, which is collecting from the tribal trader on a prepayment basis. But the Supreme Court said, but there's these other remedies. You can go to Congress to get some kind of relief. States can lobby Congress. You can intercept and prosecute the customers as they leave the reservation if you have a reason to believe they are non-tribal members purchasing untaxed cigarettes as soon as they leave the premises. Because under state law, the tax is on the purchaser. I'm afraid I have to wind this up. We're over the total time already. Sure. Any rebuttal time. I think Mr. Lobson's argument is more technically complex, so if I have any rebuttal time, I'd like him to have it. Thank you, Kevin. Good morning. May it please the Court. My name is Kit Dimke. I'm an assistant United States attorney. I think it might help a little if you lower it, yes. In the Seattle office representing the United States in this matter. Thank you. This case is about an eight-year period where the Wilbur family. That's even better. Judge Peckman makes me do the same thing. This case is about an eight-year period where the Wilbur family sold millions of cigarettes and deliberately and defiantly refused to collect any taxes whatsoever, either the Washington state cigarette tax and later under the tax contract the Swinomish tribal tax on cigarette sales made from the trading post to non-Indian purchasers, resulting in nearly $11 million loss. Despite efforts by the Swinomish tribe to obtain the Wilbur's compliance with the tax contract's provisions, the Wilburs only ceased their illegal conduct when federal law enforcement, at the request of the Swinomish tribe chairman, investigated and executed a search warrant at the trading post seizing their illegal cigarettes and their bank accounts in May of 2007. Setting aside the treaty arguments, which I will address in a moment, the main issue before the court today is whether the Washington state taxation scheme creates a legal loophole whereby the Wilburs can avoid all tax collection obligations and, more importantly, escape felony prosecution for deliberately evading those tax collection obligations. An appropriate construction of the enabling statutes in the Washington scheme and the tax contract does not warrant this result. Why escaping all taxes? I understand that they didn't pay the taxes that maybe do the Indian tribes, but is that really before us? That's a matter for the Indian tribal court? Your Honor, which I'll get to in a moment, the government's position here is when the Wilburs refused to comply with the benefits provided by the tax contract, they subjected themselves to both taxation schemes, the tribal tax and the state tax. Well, why is that if the state said during the period of a contract there is no state tax? Well, Your Honor, I want to walk through the background of those statutes because I think it's important. The government's first position is the tax contract language is actually consistent with the state's enabling statutes, and it's important when assessing those enabling statutes is to look at them collectively, the scheme as a whole collectively, and not individual pieces. Whenever anybody says look at the statutes as a whole, I know they've got trouble with the statutory language. There are some holes. It is not the most artfully drafted statute, but when you look at the statute as a whole, including the tax contract, it's clear that they're actually in harmony with each other. And I want to start, Your Honor, briefly. No, they're not. They're not? I want to start, but just briefly. Well, for one thing, there's a problem with the statute having three definitions, you know, of a tribal retailer and the contract only incorporating two of those. What do we do with that? Well, Your Honor, I think first and foremost, I think the tax contract, the parties have the ability to negotiate a narrower contract than what is provided for in the state. But if we read them as a whole together, it would include all three definitions. Not necessarily. I think had the governor and the tribe decided to contract to that full scope, that is something that they could have contemplated. In this case, they chose not to. So that they can contract for a lesser extent, and that to some degree is in part that the three definitions of Indian retailer are also listed in the disjunctive, which since they're listed in the disjunctive, I think that is support for the fact they could have contracted with only two. So you don't want us to read them all together at that point. You don't want us to read the statute and the contract together as supplying the definition of Indian retailer. That's correct, Your Honor. We believe that the two-part definition of tribal retailer as provided in the contract is what should control in this case. But going back to the enabling statutes and how they're consistent with the tax contract, I think it's important to first look at the backdrop before those enabling statutes were enacted. You know, can I focus on the language of the statute for a minute before we sort of disappear into the larger policy arguments and so on? I think what troubles me is apparent from the questioning I had at the beginning, and that is we've got the three separate periods, the second of which is a period after the signing of the tax contract, but during which the Wilbur's still have a license from the tribe to sell cigarettes. I have terrible trouble understanding why during that period taxes are not owed to the tribe. As I view it, during that period the Wilbur's owe taxes to the tribe. They do not owe taxes to the state. Okay. Why in the world do they owe taxes to the state? Because of the tax contract language, and the tax contract language. Okay, what language is that? And that is it's in Part 5, subsection 6, at the record on page 57. Okay, hang on a second. Okay. Where do I look? It's on the excerpts of record provided by appellants on page 57. Okay, hang on a second. Appellant. Page 57? Yes, Your Honor. Paragraph 6? Yes, Part 5 and then subsection 6. And what it says is state agreement regarding compliance with state and federal law. And here it says, as to all transactions that conform with the requirements of this contract, such transactions do not violate state law, and the state agrees that it will not assert that any such transaction violates state law for the purposes of the CCTA and other federal laws specifically based on violation of state cigarette laws. Here, to the government, the language is clear, could not be more clear, that the state will view only conforming sales as exempt from state law and their enforcement authority. The state intended to maintain authority and seek criminal sanctions for those cigarettes that were not conforming to the tax contract's requirements. Does that mean any time there's a dispute between the tribe and a licensed Indian retailer on the reservation, as to the amount owed in tax to the tribe, and it turns out that the tribe says you owe us $100,000 and the retailer says we only owe you $50,000, and it turns out after the dispute is resolved that the tribe was right, that there was a violation of state law because the Indian retailer said I only owe you $50,000 in tax? I think it would depend upon what the nature of the violation is here. But with respect to these cigarettes, we are... Your reading of this clause makes it sound as though any time an Indian retailer licensed by the tribe has a dispute or is not paying taxes to the tribe to the full amount owed to the tribe, that amount of tax that is owed to the tribe but not paid to the tribe is owed to the state. I have trouble reading this language as saying that. Your Honor, actually what the government is arguing is it's owed to both. They are still subject to the tribal tax code, but then they are also subject to the state taxation system, and this is why. Under Colville, it was clear that both the tribes and the states had their sovereign ability and authority to tax sales on reservations to non-Indian purchasers. So both sets of authorities, the tribe and the state, could tax the same sales. After Colville, this obviously caused, as the cases have shown, lots of enforcement problems from the tribes not recognizing the legitimacy of Colville to the tribes and the tribal retailers or Indian retailers and being subjected to two sets of taxation, to the tribal tax and the state tax. Tax compacts were kind of a way to, it was a political compromise of how we resolve that issue of they're now subject to two taxation sovereigns, that when there's a tax compact, and again, this goes to, you know. I have trouble understanding how the contract overrides the statute, and I also have difficulty understanding how fairly clear language, which is very unusual to find in a statute that deals with taxes, that when it says that the state code doesn't apply to sales of cigarettes by an Indian retailer during the period of a tax contract, it doesn't say that if somebody violates the contract, that he then, then the statute does apply to him. It just said there is no tax statute during the period of the contract. Well, Your Honor, I think, again, I think the statute needs to be looked at the whole, and there's a couple provisions we're not looking at right now, and one of those is 455, subsections 12 and 13. And with each of the state taxes, the state statutes the defense refers to, each of those statutes always refers back to 455, and I think it's important to do that now. And subsections 11 and 12 talk about... Wait a minute, you're going too fast. I'm sorry, Your Honor. What are all these numbers? What are you talking about? Right now I'm talking about the enabling statutes, which is RCW 4306. Hang on a second. Okay, I'm at 4306, and then where are we going to go? 455. Do you know what page we find 455 at? Your Honor, I'm not certain it was submitted with the briefs. I actually don't know if that was provided or not. Okay, I've got it. So where are we looking in 455? This is the enabling statute, which allows for cigarette tax contracts. When you look at subsections 12 and 13, those... Hang on, you're going too fast. I'm sorry. I'm slow. You're fast. It's a lot of material. Okay. These provide that it's the intent of the legislature that the Liquor Control Board and the Department of Revenue continue their division of duties in shared authority under 8224, and the Liquor Control Board is responsible for enforcement activities that come under that chapter. The next provision, 13, the last sentence of that subsection states, the tax contract shall include provisions for delineating the respective roles and responsibilities of the tribe, the Department of Revenue, the Liquor Control Board. It's clear under these enabling statutes that the legislature envisioned a role for the Liquor Control Board and the Department of Revenue in enforcement. They can only have enforcement authority if they have something to enforce, and that would be their taxation authority. These provisions, if, as the Wilbers argue, that the state intended that there would be no enforcement of a state taxation while a contract was in force, these provisions should never be in that statute because there would be nothing for the Liquor Control Board to enforce if there's no taxation authority. Maybe it shouldn't be in the statute, but the part that is in the statute that says there's no state taxes during that period of the contract. That's a lot clearer than saying the Liquor Control Board continues its role in sharing with whatever the other department is. The Liquor Control Board and Revenue Department share whatever duties they had. They can share them forever, but there's no state tax during the period of a contract. Well, Your Honor, if true, then there would be no role for the Liquor Control Board to play if there was no taxation authority for them to assert in their enforcement activities over, and I think that's why it's important the statute be read as a whole, where, as opposed to the Wilbers, they bring you these specific pieces of the statute and don't consider the rest of the statute. And when you look at subsections 12 and 13, it shows that the state legislature envisioned that there would still be a role, and that is actually reflected when you get to the language of the tax contract, is that they discuss that the liquor control, the tax contract provides, is consistent with the statute. The Liquor Control Board maintains its enforcement responsibilities under Chapter 8224, and it has a responsibility to enforce those provisions. Then there's also this language, which is the state agreement regarding compliance with state law, which is provided for in the tax contract. And I want to talk for a moment about why that provision is necessary, because there needs to be an enforcement. That provision is necessary. Which provision is necessary? Right now I'm talking about Section 5.6 in the tax contract, about state agreements regarding state and federal enforcement of nonconforming transactions. And I want to talk about why that's important, particularly in this case. There needs to be an enforcement mechanism, including criminal prosecution, when noncompliance occurs. The Wilbers conduct here is the precise situation where you need a provision still allowing federal and state law enforcement. Here the Wilbers are selling unstamped cigarettes. They're not collecting anyone's tax. They're not abiding by the licensing requirement. Okay. Which section of the contract are you talking about? I'm talking about Section 5, Roman numeral 5, subsection 6, which is the part that talks about the state only is going to retrocede its authority to conforming sales. And I want to talk for a moment about what was going on with the Wilbers' conduct here. By selling the unstamped cigarette, they were damaging the tribe in two separate ways. They were not collecting the tax and remitting it to the tribe for those revenues, and they were also generating a competitive advantage for themselves. The Swinomish tribe had its own legally operating smoke shop just a few blocks away from the trading post. By the Wilbers not collecting that tax, they could sell those cigarettes at a lower price and then draw customers away, not only from state marketers in the cities, but also from the Swinomish tribal store. The Swinomish tribe attempted, in compliance with the contract, to make efforts to get the Wilbers in compliance. They sent them letters demanding that they sell tribally stamped cigarettes. You know, let me ask you this. Yes, sir. I'm looking at this Section 6. As to all transactions that conform with the requirements of this contract, as I read the contract, it imposes requirements on the tribe. What part of the contract imposes requirements on the retailer? Well, it imposes requirements that the taxes be sold with tribal stamps. Show me in the contract requirements that are imposed on the retailer as distinct from imposed upon the tribe. Your Honor, the tax contract is not directly imposed on tribal retailers. That is then put into the tribe. You talk so fast. Oh, I'm sorry. The tax contract. I hesitate, I talk slowly, and if we take you over time, that's our problem, not yours. Okay. Section 6 in Roman V says, All transactions that conform with the requirements of this contract. Okay. And I'm trying to figure out what does the contract require and on whom or on what entity are the requirements imposed? As I read the contract, at least so far, the requirements are imposed upon the tribe that's a contracting party. The requirements are not imposed upon the retailer. Can you point to me provisions in the tax contract that impose requirements directly on the retailer? No, Your Honor. What is imposed directly on the retailer goes to what is in the tribal tax code. Okay. Therefore, I have trouble reading this clause as saying that merely because the Wilbers aren't being taxed to the tribe, that we have something that hasn't conformed with the requirements of the contract because it's not a requirement on the Wilbers. It's a requirement on the tribe. So the fact that the Wilbers are not paying contracts to the tribe does not mean that there's a violation of state law. It means that they're violating tribal law, but it doesn't mean that there's been a failure to conform with the requirements of the contract because the Wilbers are not required by the contract to do anything. Well, Your Honor, except for that this is the agreement, the state's agreement with the tribe as to when we're going to retrocede our authority. I understand that, but I'm looking at the specific language, and I'll ask you the question again. Yes. The language says, as to all transactions that conform with the requirements of this contract, I'm trying to figure out, okay, what are the requirements of the contract and is a tribal member, such as the Wilbers, in not paying taxes to the tribe violating a requirement of the contract? Where in the contract is there a requirement imposed upon the tribal member? Well, in terms of the requirements themselves, there's numerous requirements. Give me one. The ones that are relevant here are that cigarettes sold must have a tribal tax stamp. So tell me where that comes from. That's in Part 5, subsection 1A, in the record at 55. All cigarettes must bear a tribal stamp, okay? And that is the primary argument here, is that the cigarettes sold by the trading post did not conform to the requirements of the contract because they were all sold without stamps. Another one is that cigarettes must be sold by a tribal retailer and that that tribal retailer must be licensed by the tribe. Here, for a period, the Wilbers were not licensed by the tribe. And it's not that the Wilbers are required to comply with the contract. What the contract does is it provides when the state is going to retrocede its authority and over what transactions, it's going to say it's not a violation of law. It's not an agreement between the state and the Wilbers, but it is the state saying when we're going to consider that these aren't a violation of state law and when state tax doesn't apply. And the tribal tax code, when you look at it, makes repeated references to the tax contract and that the tribal code was enacted to be in compliance with the tribal contract. If the taxes, I'm sorry, if the transactions don't conform to the contract's requirements that there be tribal taxes, I'm sorry, tribal stamps imposed, then they're nonconforming and the state didn't retrocede its taxation authority. Therefore, there's still state and federal jurisdiction over those cigarettes. Let me ask you this, if I can. If I were to disagree with you, I mean, I guess I have to say if the panel were to disagree with you, and if we were to hold that during this middle period after the tax contracts come into effect and while the Wilbers still are licensed, and if we were to hold that during that period taxes are owed to the tribe but not to the state, and we were to say therefore there's no violation of law during that period, count one alleges a continuing conspiracy. Does the fact that during that middle period of roughly two years or so, there was no violation of law, does that mean there's no continuing conspiracy as alleged in count one? Your Honor, I have two responses to that. First is the statute of limitations issue. The defendants never challenged this case on the statute of limitations. This is not a statute of limitations question. You've alleged a continuing conspiracy, and I'm saying that in the middle of that period for two years there was no illegal behavior. So I'm asking is that a continuing conspiracy within the meaning of the indictment? Well, Your Honor, I think there's another issue here, and that's the pre-notification. The tax contract specifically requires or specifically states, and as does the statute, that the Liquor Control Board's enforcement activities, enforcement efforts still apply under 8224. One of those requirements is the pre-notification requirement. Even during that period where the Wilbers were a licensed tribal retailer, they were not pre-notifying for the shipments of those cigarettes. And this court has held numerous times in Baker, in Gray Poplar's, in Gord, in there's one more. I'll think of it. That the failure to pre-notify also renders the cigarettes both contraband under state law and under federal law because if pre-notification isn't given, a state tax is due and owing. And pre-notification is triggered by what? When you ship unstamped cigarettes into the state of Washington or through the state of Washington, you have to give pre-notification to the Liquor Control Board that those cigarettes are being shipped so the Liquor Control Board can monitor where cigarettes are going. And this court has held numerous times the failure to pre-notify is, in fact, a basis for cigarettes to be contraband under state and federal law. So for that period, that ruling would apply as well. What has happened here is interpreting the statute at the Wilbers' request, it generates a loophole which allows them to flout the taxation authority and suffer no felony criminal consequences for this. As this court is well aware, Indian tribes don't have the ability to prosecute felonies and they also don't have the ability to criminally prosecute non-Indians. We have non-Indians involved in this case. So as a result, for someone like Brenda Wilber, the interpretation that the Wilbers ask of this provides there would be no criminal prosecution for her conduct whatsoever and no felony prosecution for the rest of the Wilbers. You know, I'm having trouble. I'm thinking about your argument about the pre-notification. Yes, Your Honor. The indictment in Count 1, Paragraph 1 charges that the Wilbers did knowingly, da-da-da-da, conspire and agree among themselves to purchase, ship, transport, receive, possess, sell and distribute contraband cigarettes. Okay. And I then look at the definition of the term contraband cigarettes in the statute. The term contraband cigarettes means a quantity in excess of 10,000 which bear no evidence of the payment of applicable state or local cigarette taxes. But that brings us back to whether state or local taxes are owed. Right. And if no state or local taxes are owed, I don't see that it's a contraband. Under Fyander, under this court's ruling in Fyander and Gord, what the court said is the failure to pre-notify is an independent basis for which the cigarettes can be contraband under both state and federal law because if pre-notification isn't given, state law requires that those cigarettes be stamped and that there's a tax due in owing. So when you don't pre-notify, the cigarettes have to be stamped as they're transported through the state of Washington. Okay. And as I was saying, Your Honor, is that the interpretation here that the Wilbers ask for, it's inconceivable that the state legislature intended to create a tax haven for the Wilbers, that once the tax contract is in effect, it gives up all taxation authority and all law enforcement authority over every transaction that occurs on a reservation, that the state intended to stand back, state and federal authorities intended to stand back and do nothing where illegal sales are taking place when they are specifically, in this case, are asked by the Sonomish tribe to assist in an investigation. And that's exactly what happened here. Now, when you say that when illegal sales are taking place, you mean because they haven't pre-notified the state of Washington? No, they're illegal sales because no tax is being pre-collected on those sales. That's why they're illegal. All right. So it's inconceivable that the legislature would say, during this period of a contract, we're going to turn the taxing matters over to the tribe and the members are supposed to pay the tribe, and if they don't, the tribe will try to collect the taxes. That's inconceivable? Well, no, what the ultimate conclusion the Wilbers draw from that is that there's no state or federal enforcement to make sure that there's actually compliance with the state's agreement on retrocession. The state's only agreeing to retrocede because a similar tax to its own is going to be collected on these cigarettes. And that wasn't happening here. No tax was being collected on these cigarettes, in part because the tribe didn't have the ability to enforce it. And on this matter, I would refer the court to the tribe's victim impact statement, which is at the Supplemental Excerpts of Records starting at 31, and it talks about how the tribe didn't have the ability to enforce its regulations on the Wilbers because it didn't have the resources to do so. And absent the federal law enforcement stepping in to enforce under the provision in the Compact, which says that if they don't conform, there's still a violation of state and federal law, there would be nobody to regulate the Wilbers because the state recognized it didn't have the enforcement ability to do it itself. And why does the state not have the enforcement ability? Well, Your Honor, what the Wilbers, the way they interpret the statute, is once a tax contract is in effect, the state retrocedes all of its authority, and thus there's no tax due and owing, so the state can't do anything about it. That's the way they interpret the statute. I understand that, but that's not really my question. You said the state cannot enforce. Most of the things the Wilbers say you disagree with, and now you're using the Wilbers argument as a response as to why the state can't enforce. Why does the state think it can't enforce? Your Honor, what I'm saying is, given their argument, what the implication of that is, the state wouldn't be able to enforce, and that cannot be what the legislature meant. But that's not my question. I'm sorry, Your Honor, I don't understand. Okay. Well, what you said was the tribe asked the feds to come in because the tribe itself didn't have the resources to do it, and the state couldn't enforce. So I'm asking you, why couldn't the state enforce? Well, under their theory... No, I'm not asking under their theory. I'm asking under your theory. Well, as typically happens with the tribe, the tribes are not going to recognize the legitimacy of Colville, and they're not going to ask the state to come in and enforce state laws on their reservation. That's just the reality of how it works, is when they want help enforcing, particularly when it comes to taxation on issues and cigarettes, they generally request federal law enforcement help. That's different from saying the state can't do it. Well, if, and I guess maybe the court misinterpreted my argument. What I'm saying is under the interpretation that the Wilbers gave, there would be no place for state or federal law enforcement authority, and I'm saying that that's wrong. There is the ability for state under the taxation scheme as it exists. The state has not retroceded its authority over these cigarettes, and thereby it gives both the state and the federal law enforcement the ability to regulate the sales of these cigarettes. What, if anything, are we likely to learn if we wait for the Washington Supreme Court to decide this case that comes out of the Puyallup Reservation? Your Honor, I don't think the court needs to wait for the Washington Supreme Court on that case. There are independent grounds which the court would rule on that wouldn't be relevant here. In addition, the government's primary argument is that the tax contract itself says that there's not a retrocession with respect to the sales of these non-conforming cigarettes because there were no tribal tax stamps. I'm not certain that that is a squarely presented issue in the Kaminak case. I recognize I am way over my time.  with respect to the treaty? Okay. With that, Your Honor, the government would request that the court affirm the conviction on all grounds and would submit the rest of the issues on its brief. Thank you. Thank you, counsel. Judge Fletcher, you asked where in the contract did it impose any obligation on the Wilbers. Excerpts of record page 64 is the page which has part 12 sub 3 of the contract which says the opposite. It says no third party shall have any rights or obligations under this contract. The government resurrects this argument about lack of a pre-transportation notice turning the cigarettes into contraband and doing away with the retrocession. The government consistently fails to mention that in 2003 the transportation pre-notification statute was amended when all these statutes were enacted and it was amended to make specific reference to cigarette tax contracts and in subsection 8 it says nothing in the preceding sections shall limit otherwise lawful activity under a cigarette tax contract. I don't follow that argument yet. The argument basically is they added subsection 8 to the pre-transportation notification statute which relieves people who are on reservations that are covered by cigarette tax contracts from giving pre-transportation notice. They don't have to do it anymore because they're covered by a contract. There's no point in doing it anymore because they don't have to attach state stamps anymore so there's no point to giving notice that I'm going to bring. So what's the statutory provision you're referring to because I'm not sure I'm familiar with it yet. 82.24. Say it slowly and loudly. RCW 82.24.250 is the statute which deals with pre-transportation notice and the government cites to subsection 4 which talks about how you have to give notice if you're going to bring un-stamped cigarettes through the state. You're supposed to call up the liquor control board and say hey we got some cigarettes that don't have any state tax stamps on them. But in 2003 the legislature amended it to add subsection 8 that says nothing in this section shall limit otherwise lawful activity under a cigarette tax contract. Because once you're in a reservation where it's covered by a contract there's no reason to give notice anymore. So they eliminated that requirement. It was one of the three statutes which they amended which had identical language saying nothing in this statute limits otherwise lawful activity under a cigarette tax contract. The other two statutes were 82.24.030 and 040 and those are the statutes that say that you have to affix a state tax stamp. But once you're covered by a cigarette tax contract there's no reason to affix a state tax stamp. So they amended the statutes in 2003 to say that doesn't apply if you're covered by them. How does that argument square with the Feander case decided by this court in 2008? The Feander case doesn't involve any issue involving a cigarette tax contract. Involving a what? A cigarette tax contract. No one argued. I tried to look at that to see if they could have argued it. A tax contract was entered into with the Yakama Nation I believe in 2004. I believe, but Mr. Feander would know better than I, I believe that all of the acts giving rise to Roger Feander's criminal charge occurred before the effect of the cigarette tax contract with the Yakama tribe. But I can only say I believe that. I can say that I know that in the Feander case no issue involving cigarette tax contracts is briefed, argued, addressed in the opinion whatsoever. Mr. Roger Feander didn't make any argument that there's a cigarette tax contract in place and so I don't have to give that notice anymore. The only place that the contract refers to the tax retrocession is in Part 3, Roman 3, Sub 2, Sub E. And there it says simply, pursuant to RCW 43.06.455, the state retrocedes from its tax during the time this contract is in effect. It says nothing about unless there's a non-conforming transaction. It doesn't say that. That's the only place the contract addresses the tax retrocession. And I take issue with describing a tax retrocession as a loophole. Okay, and would you give me that section of the tax compact one more time? The one that refers to the retrocession is Part 3, Roman 3, Sub 2, Sub E. Sub B? E is in Eagle City. E, thank you. Yeah, retrocedes from its tax during the time this contract is in effect. Yeah. The same language as the statute. The government... You've got to look at something as a whole. Well, I never read a case that said when construing statutes as a whole, you have to look at a contract. So I just don't buy that notion at all, that to construe a whole bunch of statutes, you need to go look at a contract. But that takes me back to the notion that the government insists that the governor can enter into a contract narrower than the statute. Let me ask you this question, which is the same question I asked the U.S. attorney, and that is assume for the moment that we might hold that during that second period, the period after which the tax contract is in effect and during which they still have their licenses, that there's no violation of law in the sense that there are no taxes owed to the state. The state's response, the government's response was, well, there's still a violation because of the failure to ship. Well, assume further that we agree with you that there's no violation on the pre-notification and assume then that during that two-year period there was no violation of law. Why is that nonetheless not a continuing conspiracy? They just stopped being bad for a while. Well, I guess my response would be it's not the crime they conditionally pled guilty to. And I don't think you can be in a sense convicted of a different crime than the crime that you pled guilty to. I thought that was a Sixth Amendment right that you had. Well, but wait a minute. They pled guilty to a conspiracy between the dates of 1999 and 2007, so they were doing bad things prior to the tax contract, and depending on how we deal with that third leg of the definition, they might have been doing bad things after they lost their license, and there was a period of interruption of illegal activity, but before and after, why is that not still consistent with Count 1? I cited you a case, I don't remember the name, that dealt with variances in charges of conspiracies. When you charge one conspiracy but end up convicting them of a different conspiracy, there is a fatal variance. And that's what I think you're suggesting to me, that somehow that can be done here, and I don't think it can be done. Now, I'm lost here. I also wanted to go back to the tax loss question. If you disagreed with me and decided that you could still affirm some sort of conviction, you still have this problem that the judge has decided that $10.9 million is owed to the state, which is based on her saying their arithmetic looks good, that they've calculated every cigarette imaginable over this seven-year period. And I don't think that's right, and you would have to at the very least remand for recalculation of the tax loss, recalculation of the restitution, and resentencing. The judge said, why don't I make this stuff payable jointly to an account to the United States and the tribe? And the government said, you can't do that. The judge said, then why are you having the tribe appear in front of me as the victim if you're telling me that the victim is the United States? And I don't think any of that is consistent. Okay. I guess maybe hopefully two of the last things I want to say here are that I wanted to point you to Part Roman 12, Sub 1 of the contract, where it basically says that the tribe concedes nothing by entering into this contract. It's not conceded. Let me read you exactly what it says. By entering into this contract, the tribe does not concede that the laws of the state of Washington, including its tax and tax collection provisions, apply to the tribe, its members, or its agents regarding activities and conduct within or without Indian country. And the reason I bring this to your attention is to show you that the whole idea of cigarette tax contracts was that it was a compact between sovereign nations to buy peace and to put an end to conflict that had existed for a long time. The tribe steadfastly refuses to acknowledge the correctness of several U.S. Supreme Court decisions. And the state knows that. I wish I had that ability. And the agreement that was made by the state of Washington and the tribe was we can settle our political conflict by just saying the state won't try anymore. The state won't do this anymore. We'll let you do it. Now, one of the things that the legislature put as a mandatory requirement in any cigarette tax contract is that there has to be a mediation resolution provision that has gone through first. Before the government of the state of Washington can say, that's it, we terminate the contract and we go back to collecting our tax, they have to go through the mediation process, which is 43.06.45 sub 13. And the government's argument that it's on again, off again with every non-conforming thing, that suddenly there's no tax retrocession, just completely does away with that mandatory mediation provision. The last thing I wanted to say was about the relationship between the ambiguity issues and the due process issues. The two cases I cited you, the two Ninth Circuit cases that deal with ambiguity in tax statutes that they're attempting to apply to Indians are the Hammond case where this court, I think Judge Gould said that the tax must be unmistakably clear. And it wasn't, so you can't collect it. And it was civil. They couldn't collect it in a civil case. The other case was Quinault versus Grays Harbor. And there Judge McKeown said that the tax of Grays Harbor was plagued with ambiguity and couldn't be collected. Those are both civil cases. You ratchet up even another notch when you get to a criminal tax case. And in, I think it was Dahlstrom, this court cited to a Fourth Circuit decision called United States versus Kritzer, which I cited and quoted, I think, in the brief. That case involved a criminal tax prosecution against an Indian. And the Indian was saying, I didn't pay tax on this because it's a particular kind of possessory interest that only an Indian can have in land and it's kind of novel and there's no case that there's ever come down that said that income from that kind of land is taxable by the United States, so it would be a due process violation to convict me. And the Fourth Circuit agreed. And this Ninth Circuit approved of the Kritzer decision. And the Fourth Circuit said it was undecided whether income from that particular type of an Indian possessory interest in land was taxable. There was no direct authority pointing to a ready answer. And therefore, even though the government's argument was strong that why should we treat this any different than any other type of income, even though the government's argument was strong, since it wasn't clearly established by existing authority, it was a due process violation to convict Mr. Kritzer and his conviction was reversed and dismissed. And that sort of cycles me back to the impact of the Komenaut case. It wouldn't be enough for the Washington Supreme Court to rule that, yes, there is a tax. That wouldn't be enough for the government to win and be able to uphold these convictions. They would have to hold that it was clear at the time, many years ago, it was clear beyond any doubt, that's the phrase that this court has used, clear beyond any doubt from established tax law that this tax was owed. So the Wilbers, I think we are right. There's no tax owed. But we don't have to be right in order to win. Thank you. Thank you both. Thank all three of you. Thank you. Case just argued will be submitted. The court will stand and recess for the day. Thank you.
judges: Reinhardt, Fletcher W. , Rawlinson